William A. Fuhrman (ISB 2932)
Rory R. Jones (ISB 2934)
Sam Dotters-Katz (ISB 9709)
**Jones ♦ Gledhill ♦ Fuhrman ♦ Gourley, P.A.**
225 North 9th Street, Suite 820
Post Office Box 1097
Boise, Idaho 83701
Telephone: (208) 331-1170
Facsimile: (208) 331-1529
Email: BFuhrman@idalaw.com

Laura Einstein
**Planned Parenthood of the Great Northwest and the Hawaiian Islands**
2001 East Madison Street
Seattle, Washington 98122
Telephone: (206)-328-6880
Facsimile: (206)-720-4657
Email: Laura.einstein@ppgnhi.org

Alice Clapman
**Planned Parenthood Federation of America**
1110 Vermont Avenue, NW, Suite 300
Washington, DC 20005
Telephone: (202) 973-4800
Facsimile: (202) 296-3480
Email: Alice.clapman@ppfa.org
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE STATE OF IDAHO

| | |
|---|---|
| PLANNED PARENTHOOD OF THE GREAT NORTHWEST AND THE HAWAIIAN ISLANDS, a Washington corporation.<br><br>      Plaintiff,<br><br>v.<br><br>LAWRENCE G. WASDEN in his official capacity as Attorney General of the State of Idaho, JAN M. BENNETTS in her official | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 1

capacity of Ada County Prosecutor, GRANT P. LOEBS in his official capacity of Twin Falls County Prosecutor, IDAHO STATE BOARD OF MEDICINE.

           Defendants.

## I.    INTRODUCTION

Plaintiff Planned Parenthood of Great Northwest and the Hawaiian Islands ("Plaintiff" or "PPGNHI"), on its own behalf and on behalf of its patients, by and through its attorneys of record, hereby complains and alleges as follows:

1. Plaintiff Planned Parenthood of the Great Northwest and the Hawaiian Islands brings this action to challenge the constitutionality of two recently enacted Idaho statutes that proscribe the use of telemedicine for effectuating a medication abortion, a safe, effective method of ending an early pregnancy using medications alone.  *See* IDAHO CODE §§ 18-617(2)(e) and [54-5707(3)] (2015) (the "Laws").  The Laws violate the rights guaranteed to Plaintiff and its patients under the United States Constitution by singling out medication abortion from all other medical care and unnecessarily obstructing Idaho women's access to safe, legal abortion without adequate justification.  In order to protect these rights, Plaintiff seeks judicial relief, pursuant to 42 U.S.C. §1983, declaring the Laws unconstitutional and enjoining their enforcement.

2. In 2015, the Idaho Legislature enacted the "Idaho Telehealth Access Act", a far-reaching law that seeks to remove barriers to health care that exist because of geography and health care resources.  That law recognizes the extensive benefits of telemedicine, especially for Idahoans who cannot access health care because of provider shortages and geographic barriers, and who would otherwise need to travel long distances to obtain higher quality health care.  *See* IDAHO CODE §§ [54-5702(1)-(5)] (2015).  With the passage of the Telehealth Access Act, it was

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2

definitively settled that telemedicine services, though interactive video conferencing, meet the standard of medical care in Idaho.

3. To that end, and specifically relevant here, the Telehealth Access Act permits providers to prescribe medications via telemedicine, with only one explicit exception (and subject to federal Drug Enforcement Requirements for controlled substances): a physician may not use telemedicine to prescribe the drugs needed for a medication abortion. Id. § [54-5702 (3)].

4. Also, in 2015, the Idaho Legislature amended the Idaho abortion statutes to add IDAHO CODE § 18-617 (2015), addressing medication abortions. The new section requires that a physician "examine in person" a woman before she has a medication abortion, thereby foreclosing the use of telemedicine for medication abortions. Id. § 18-617(2)(e).

5. The Laws ban the use of telemedicine for medication abortions in Idaho altogether, and threaten any physician who utilizes telemedicine for the purposes of medication abortion with serious penalties, including but not limited to loss of their medical license, criminal prosecution, and civil liability.

6. Rather than promoting women's health, the ban on telemedicine harms women because but for the ban, Plaintiff would provide safe, early medication abortions to more women. The ban, therefore, will force some women to seek abortions later in pregnancy, will force others to travel further to access abortion which will result in delay and increased medical risk, and will deny some women the method of abortion of their choice – or force them to forgo an abortion entirely. The Laws violate Plaintiff's and its patients' rights protected by the due process clause and equal protection clause of the Fourteenth Amendment to the United States Constitution, because (a) they are unnecessary health regulations without medical basis which have the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 3

purpose and effect of placing substantial obstacles in the path of women seeking to obtain an abortion pre-viability in Idaho, and (b) because they single out medication abortion from all other health services for disparate treatment without adequate justification.

## II. PARTIES

7. Plaintiff is a non-profit corporation organized under the laws of the State of Washington doing business in Idaho. Plaintiff is the largest provider of reproductive health services in Idaho, operating three health centers in the state, located in ADA County and Twin Falls County, and providing a broad range of reproductive and sexual health services including but not limited to well woman examinations, birth control, testing and treatment for sexually transmitted infections, cancer screening, pregnancy testing, and both medication and surgical abortions. Plaintiff sues on behalf of itself and on behalf of its patients who are adversely affected by Defendants' actions.

8. Defendant Lawrence G. Wasden ("Wasden") is the Attorney General of the State of Idaho. Wasden has specific statutory authority to seek injunctive relief against any physician who violates the requirements for a medication abortion. IDAHO CODE §§ 18-617(e) and 18-618(2) (2015). He is sued in his official capacity only.

9. Jan Bennetts is the County Prosecutor for ADA County, where Plaintiff's Boise and Meridian health centers are located. The ADA County Prosecutor has specific statutory authority to seek injunctive relief against any physician who violates the requirements for a medication abortion. IDAHO CODE§§ 18-617(e) and 18-618(2) (2015). The ADA County Prosecutor also has the responsibility for bringing any criminal action resulting from a violation of §18.617 as set forth in IDAHO CODE §§ 18.605(3) and 31.2604 (2015). She is sued in her official capacity.

10. Grant P. Loebs is the County Prosecutor for Twin Falls County, where Plaintiff's Twin Falls health center is located. The Twin Falls County Prosecutor has specific statutory authority to seek injunctive relief against any physician who violates the requirements for a medication abortion. IDAHO CODE §§ 18-617(e) and 18-618(2) (2015). The Twin Falls County Prosecutor also has the responsibility for bringing any criminal action resulting from a violation of §18.617 as set forth in IDAHO CODE §§ 18.605 (3) and 31.2604 (2015). He is sued in his official capacity.

11. The Idaho State Board of Medicine is a state agency as defined in the Idaho Administrative Procedures Act. IDAHO CODE § 67-5201(2) (2015). Pursuant to IDAHO CODE § [54-5712] (2015), the Board of Medicine is charged with enforcement of the Idaho Telehealth Access Act. IDAHO CODE § [54-5707(3)] (2015). The Board of Medicine also has authority to suspend or revoke a physician's license and impose fines for a violation of IDAHO CODE § 18.617 (2015), pursuant to IDAHO CODE § 18.605(2) (2015).

### III. JURISDICTION AND VENUE

12. Plaintiff brings this action seeking declaratory relief pursuant to 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201 and 2202, to redress the deprivation under color of state law of rights secured by the United Stated Constitution.

13. This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States. This Court has personal jurisdiction over Plaintiff and Defendants.

14. This Court has authority to enter a declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 5

15. This Court has authority to enter a permanent injunction prohibiting enforcement of the Laws pursuant to Rule 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

16. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 (b) (1)-(2) because all Defendants reside and work in this District, and because all of the acts and events giving rise to this Complaint occurred in this District.

### IV.   STATEMENT OF FACTS

A. MEDICATION ABORTION AT PPGNHI HEALTH CENTERS

17. PPPGNHI operates health centers in Meridian, Boise and Twin Falls. It provides medication abortions and in-clinic surgical abortions in Twin Falls and Meridian, and medication abortions only in Boise. In order to provide abortion services in Twin Falls, a physician travels to Twin Falls from Boise twice a month.

18. Abortion, both surgical and medication, is one of the safest medical procedures performed in Idaho and is extremely safe at all gestational ages. However, the earlier in pregnancy an abortion is performed, the safer it is.

19. Medication abortion involves the use of two prescription medications approved by the United States Food and Drug Administration ("FDA"). The woman first takes mifepristone, also known as RU-486, and distributed under the brand name Mifeprex. Mifepristone is a progesterone blocker, and weakens the attachment of the gestational sac from the uterine wall. Approximately 24 to 48 hours later, the woman takes misoprostol which induces contractions and completes a medication abortion.

20. Mifepristone was approved for use in the United States in 2000, and PPGNHI has provided medication abortions in Idaho since 2007. Currently, Idaho women with gestational

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 6

ages through 70 days as measured from the first day of their last menstrual period ("LMP") have the option of choosing between a medication abortion and a procedure that takes place in a health center (in-clinic/surgical abortion). For medication abortions, PPGNHI uses the most effective regimen which is endorsed by major medical groups including the American Congress of Obstetricians and Gynecologists ("ACOG").

21. The FDA allows medication abortion to be provided by non-physicians under physician supervision; advanced clinicians provide medication abortion in many other states, and the evidence shows that they do so with equal safety to the patient. Idaho law, however, prohibits this practice, IDAHO CODE §18-608 (2015), which already unnecessarily limits access to abortion in the state.

22. Women opt for a medication abortion for any number of reasons related to their own health, their tolerance of a surgical procedure, and the overall health and welfare of their families. Many women chose medication abortion because they strongly prefer to undergo the abortion in the privacy of their home, surrounded by chosen loved ones, rather than at a clinic.

23. All women seeking abortions in Idaho already face barriers that women seeking other procedures do not. For example, Idaho law requires that a healthcare provider give a patient certain printed material prepared by the Department of Health and Welfare before an abortion and that no abortion may take place until 24 hours after the patient receives this information. Women seeking medication abortions at PPGNHI (as well as women seeking surgical abortion), therefore, already make an extra trip to the health center before their abortion visit, which can contribute to delay.

24. Prior to any medication abortion at PPGNHI, each patient is screened and evaluated by qualified health professionals. This includes taking the patient's blood pressure,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 7

and an ultrasound to determine the gestational age and whether there is an ectopic pregnancy.

25. Prior to a medication abortion, PPGNHI conducts a medical history. A PPGNHI trained educator explains the medication abortion regimen, explains the risks involved, and reviews with the patient various informed consent documents and detailed written instructions on how to take the medications and what to expect during the course of treatment. The patient educator also gives the patient the opportunity to ask questions and have their questions answered.

26. PPGNHI also performs laboratory tests for the patient's hematocrit and RH-type testing.

27. The physician meets with the patient and reviews the medical history and ultrasound to determine that the procedure is safe and appropriate for the patient. The physician again explains the procedure, and attendant risks, to ensure the patient's questions are answered and that informed consent has been given. Once the physician establishes a patient is eligible for a medication abortion, has no contravening medical history, and has appropriately consented, the physician provides her with the mifepristone, and observes her taking the pill. The physician then dispenses the misoprostol and repeats the instructions for taking the misoprostol, at home, 24-48 hours later.

28. Before the patient leaves the health center, she is given emergency contact information. PPGNHI has licensed providers on call 24 hours per day, seven days per week.

29. Also, before a patient leaves the health center, a follow up appointment is scheduled for the patient to return to the health center to verify that the pregnancy has ended.

30. If telemedicine was permitted for medication abortions, the woman would be in the PPGNHI health center, and PPGNHI would follow the same procedures outlined in

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 8

paragraphs 24-29. The only difference is that the physician would communicate with and observe the patient via a secure, real-time, interactive video teleconference rather than being in the same room.

31.     With electronic medical records, the physician has access to the patient's entire PPGNHI medical record, including her medical history and ultrasound image, whether or not the physician is in the same health center as the patient. With video conferencing, the physician would see the patient and would instruct the patient to pick up the mifepristone, hold it to the camera so the physician could see it was the correct pill, and observe the patient take it. The physician would then instruct the patient to take the misoprostol home with her and to administer it herself 24-48 hours later (which is the same thing she does if the physician is with her in the health center when she takes the mifepristone).

32.     Complications from a medication abortion are extremely rare, whether the medication abortion is provided with the physician at the health center or by telemedicine. Complications are lower earlier in the pregnancy.

33.     Because many women do not detect their pregnancies until between at least 4 to 6 weeks LMP, and often later, the window during which a woman can exercise her choice to have a medication abortion is a narrow one. That window is further narrowed for PPGNHI patients in Twin Falls by the fact that a physician is present at the Twin Falls Health center only twice a month to perform abortions. This inevitably means that some women, because of the timing of the pregnancy test, the gestation of the pregnancy, and the availability of a physician, will lose an opportunity to choose a medication abortion unless they can drive to Meridian or Boise. Roundtrip travel to Boise or Meridian is 270 miles, and takes approximately four hours of

driving time. Telemedicine would remove this obstacle for women in or near Twin Falls who want or need a medication abortion.

34. At the PPGNHI Meridian Health Center, a physician is present on Thursday and Friday to perform medication abortions. At the Boise Health Center, a physician is present two Fridays per month to perform medication abortions. These physicians would be available to treat a woman in Twin Falls via telemedicine any of those days, greatly increasing the availability of medication abortion in Twin Falls.

B. THE IDAHO TELEHEALTH COUNCIL AND THE PASSAGE OF THE IDAHO TELEHEALTH ACCESS ACT

35. The Idaho Telehealth Council (the "ITC") was created by the Idaho Legislature in 2014. H. Con. R. 46, 62d Leg., 2nd Reg. Sess. (Idaho 2014). One charge of the ITC was to coordinate and develop a comprehensive set of standards for the practice of telemedicine in Idaho. This set of standards was to be drafted into legislation to be presented at a subsequent session of the Idaho Legislature.

36. The membership of the ITC represents a broad spectrum of the health care industry in Idaho, including but not limited to: representatives of several major insurance providers in the state such as Blue Cross of Idaho and Pacific Source; representatives of numerous state agencies such as the Department of Insurance, the Board of Medicine, and the Bureau of Occupational Licenses; representatives of health care trade organizations; telemedicine experts; and others.

37. The ITC held its first meeting on July 25, 2014, and thereafter met on a monthly basis, with more frequent meetings during the 2015 Regular Session of the Idaho Legislature. Meetings of the ITC were held in accordance with Idaho Open Meeting Law, and agendas and minutes were kept for all meetings.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 10

38. The legislation drafted by the ITC would eventually come to be called "The Idaho Telehealth Access Act". *See* H. B. 189, 63rd Leg., Reg. Sess. (Idaho 2015), (the "Telehealth Access Act"). Included in the draft legislation (and later part of the bill enacted by the legislature) is a provision permitting healthcare providers to prescribe medications via telemedicine, subject to the standard of care in the community, and with a limitation on prescribing controlled substances that is required under federal law (mifepristone and misoprostol are not controlled substances).

39. According to the official ITC minutes, on January, 29, 2015, when the draft legislation was in a final review stage, a member of the ITC reported a "potential obstacle that the Council may want to take a pro-active approach on" because of "the problems it could cause…." The member proposed, and the ITC adopted, an amendment to the draft legislation to prohibit health care providers from prescribing a drug via telemedicine for the purpose of causing an abortion. Upon information and belief, no member of the ITC member articulated any medical reasons for this limitation or how it would contribute to protecting a woman's health.

40. In 2015, the Idaho Legislature passed the draft legislation prepared by the ITC, known as the Idaho Telehealth Access Act, and codified at Idaho Code section 54, Chapter 56. The Act was signed into law by Governor Otter, and took full effect on July 1, 2015. The Act includes the prohibition against prescribing a drug that causes an abortion proposed by the ITC. IDAHO CODE § 54-5607(3) (2015). These are the only medications that may not be prescribed by telemedicine under any circumstance.

41. The Telehealth Access Act makes specific findings regarding the benefits of telemedicine for Idaho citizens. Specifically, the legislature found that:

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 11

- "[t]elehealth services enhance access to health care, make delivery of health care more cost-effective and distribute limited health care provider resources more efficiently" IDAHO CODE § [54-5702(1)] (2015);

- "[c]itizens with limited access to traditional health care may be diagnosed and treated sooner through telehealth services than they would be otherwise, resulting in improved health outcomes and less costly treatments due to early detection and prevention" IDAHO CODE § [54-5702(2)] (2015);

- "[t]elehealth services address an unmet need for health care by persons who have limited access to such care due to provider shortages or geographic barriers" IDAHO CODE § [54-5702(3)] (2015);

- "[t]elehealth services provide increased capacity for appropriate care in the appropriate location at the appropriate time to better serve patients, providers and communities" IDAHO CODE § [54-5702(4)] (2015);

- "[w]hen practiced safely, telehealth services result in improvement in health outcomes by expanding health care access for the people of Idaho" IDAHO CODE § [54-5702(5)] (2015).

42.  The benefits intended by the Telehealth Access Act are not available to women who have a medication abortion.  There is nothing in the record developed by the legislature that demonstrates how restricting the ability of a physician to prescribe drugs that cause an abortion furthers any interest in protecting the health of women.  Nor is there anything in the records that demonstrates that the legislature considered the adverse health impact of limiting access to abortion.

43.  The Telehealth Access Act subjects a provider who violates the Act to discipline

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 12

by the provider's licensing board.  IDAHO CODE § [54-5712] (2015).

### C.  HB 154 – PHYSICIAN PHYSICAL PRESENCE AND WOMEN PROTECTION ACT

44. In 2015, the Idaho Legislature also passed HB 154, titled the "Physician Physical Presence and Women Protection Act."  HB 154 amends the existing Idaho abortion statute to include a section 18-617 pertaining to "chemical abortions."  HB 154 sets forth certain requirements for medication abortions, and specifically requires that a physician "has examined *in person* the woman to whom the abortifacient is administered to determine the medical appropriateness of such administration and has determined that the abortifacient is sufficiently safe for use in the gestational age at which it will be administered." Id. § 18-617(2)(e) (emphasis added).  HB 154 does not define "examined."  However, by its terms, it would prohibit the use of telemedicine for a medication abortion because the physician must at least see the patient "in person."  The only stated purpose of HB 154 by the legislature is to "require[] a physician to conduct an in-person examination and counseling of a pregnant woman prior to prescribing abortion-inducing drugs."  HB 154 Statement of Purpose.[1]  The legislative Statement of Purpose makes no mention of a medical justification for requiring a physician to examine a woman "in person" or how the law will benefit or protect the health of a woman, despite the fact that the bill is entitled Physician Physical Presence and Women Protection Act."  HB 154 was signed into law by Governor Otter, and took full effect on July 1, 2015.

45. There is nothing in the record developed by the legislature that demonstrates how the "in person" exam requirement for a medication abortion furthers any interest in protecting the health of women.  Nor is there anything in the records showing that the legislature considered the adverse health impact of limiting access to abortion.

---

[1]  http://www.legislature.idaho.gov/legislation/2015/H0154SOP.pdf

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 13

46.     The Telehealth Access Act also subjects physicians to potential civil and criminal penalties, not otherwise imposed on other physicians who prescribe legend drugs.  The Idaho abortion statute provides that a physician who violates the telemedicine ban is "guilty of a felony" and subjected to fines of up to $5,000 and/or imprisoned for 2-5 years. IDAHO CODE § 18-605(3) (2015).  It further subjects physicians who violate the telemedicine ban to professional discipline and civil penalties of $1,000-5,000.  *Id.* § 18-605(2).

C.   THE IMPACT OF THE LAWS ON WOMEN IN IDAHO

47.     By prohibiting the use of telemedicine for medication abortions, Defendants are preventing women "with limited access to such care due to provider shortages or geographic barrier" IDAHO CODE § [54-5702 (3)] (2015) from accessing the benefits recognized in the Telehealth Access Act.

48.     The prohibition against using telemedicine for a medication abortion is unnecessary to protect or advance the health of women seeking lawful abortion services, and is demonstrably detrimental to their health.  The Laws delay access to abortion (and thereby increase the risk of complications).  They mean that some women will be required to travel to Boise or Meridian for a medication abortion who could have otherwise gotten one in Twin Falls.  This will mean increased costs for gas, time off from school or work, childcare, and for many of these women, will delay the abortion.  The Laws will prevent other women from being able to choose medication abortion because the delay will bring their pregnancies beyond the 70 days cut-off for this method.  That, in turn, will require the more invasive surgical procedure for patients still wishing to obtain an abortion.  Some women, because of these burdens, may not be able to access an abortion at all.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 14

49.     By limiting access to medication abortion services, the Laws also reduce access to early screening for ectopic pregnancies, which is key to safe and timely diagnosis, and reduce access to important follow-up care.

50.     By carving out a single exception for the drugs that may be prescribed under the Telehealth Access Act, the legislature will deny women who choose to have a medication abortion access to telehealth services that are available to other Idaho citizens.

### V.     CLAIMS FOR RELIEF

A.  RIGHT TO DUE PROCESS OF LAW – UNDUE BURDEN

51.     Plaintiff reaffirms and realleges each and every allegation made in paragraphs 1 through 50 above as if set forth fully here.

52.     The Laws impose an undue burden on Plaintiff's patients' access to abortion in violation of rights guaranteed to them by the due process clause of the Fourteenth Amendment to the U.S. Constitution.

B.  EQUAL PROTECTION

53.     Plaintiff reaffirms and realleges each and every allegation made in paragraphs 1-52 above as if set forth fully here.

54.     The Laws violate Plaintiff's and its patients' rights secured by the equal protection clause of the Fourteenth Amendment by singling out women seeking a medication abortion, and denying them access to telemedicine services that are generally available, and by singling out medication abortion for requirements not imposed on comparably safe and straightforward medical treatments without adequate justification.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment against Defendants as follows:

1. For declaratory judgment that IDAHO CODE §§ 18-617(2)(e) and [54-5707(3)] (2015) are unconstitutional, unenforceable, null and void;

2. For injunctive relief permanently enjoining Defendants, their employees, agents, appointees or successors from enforcing, threatening to enforce, or otherwise applying the Laws;

3. For an Order granting Plaintiff's attorneys' fees, reasonable costs and expenses pursuant to 42 U.S.C. § 1988; and

4. Such further relief as this Court deems just and proper.

DATED this 1st day of December, 2015.

By: /s/ William A. Fuhrman
William A. Fuhrman
Jones ♦ Gledhill ♦ Fuhrman ♦ Gourley, P.A.
Idaho State Bar Association No. 2932

Rory R. Jones
Jones ♦ Gledhill ♦ Fuhrman ♦ Gourley, P.A.
Idaho State Bar Association No. 2934

Sam Dotters-Katz
Jones ♦ Gledhill ♦ Fuhrman ♦ Gourley, P.A.
Idaho State Bar Association No. 9709

Laura F. Einstein*
PLANNED PARENTHOOD OF THE GREAT
NORTHWEST AND THE HAWAIIAN ISLANDS

Alice Clapman*
PLANNED PARENTHOOD FEDERATION OF
AMERICA

*Counsel for Plaintiff Planned Parenthood of the Great Northwest*

\* Motions to appear pro hac vice forthcoming

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 16